NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MICHAEL P. HENSHAW, | Hon. Dennis M. Cavanaugh |
| Plaintiff, | **OPINION** |
| v. | Civil Action No. 04-CV-6106 (DMC) |
| ROOFERS LOCAL #4 PENSION FUND, | |
| Defendant. | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon a motion by Roofers Local #4 Pension Fund ("Defendant"), for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court did not hear oral argument on this matter pursuant to Rule 78 of the Federal Rules of Civil Procedure. After carefully considering the submissions of the parties, and for the following reasons, Defendant's motion for summary judgment is **granted.**

## I. FACTUAL BACKGROUND

Roofers Local #4 Pension Fund was created in 1957 pursuant to Section 302(c) of the Taft-Hartley Act, 29 U.S.C. §186(c). (Defendant's Brief in Support of its Motion for Summary

Judgment ("Def. Br.") at 1). The Pension Fund has a board of trustees ("Board") composed of an equal number of employers and employees. Id. The Pension Benefit Plan delineates the requirements for earning credited service, break-in-service rules, and vesting rules. (Id. at 1-2).

Under the Pension Benefit Plan, an employee must log ten years of credited service to be eligible to receive benefits. (Id. at 9). Once the specified amount of credited work time is accumulated, the pension plan vests and the employee is entitled to receive benefits. (Id.) Pursuant to Defendant's Pension Fund Plan, every 100 hours accrued is considered one year of credited service. (Id. at 8-9). Plaintiff had nine years of service recorded before he stopped working under the Defendant's collective bargaining agreement. (Id. at 9) The Pension Plan's regulations regarding breaks-in-service provides that if a person does not log any employment credit for a period of time that equals the period of time for which they have already accumulated credits, then their prior credited service is cancelled. (Id.).[1]

Plaintiff worked as a journeyman roofer in the Local 4 labor union from 1979 to 1990. (Id. at 2). Local 4 and its employers, through collective bargaining agreements, sponsor a number of fringe benefit programs, including a Pension Fund. (Id. at 3) Contributions to the fund are made by employers who pay a set amount for each hour worked by an employee. (Id. at 4-5). Under the plan, employees do not have individual accounts and are not permitted to make

---

[1] Plaintiff had nine years of service when he left Local 4, and failed to record any additional service after 1991. (Def. Br. Ex. 3 at 37). Therefore, as of January 2001, his break-in-service would have exceeded the credited service logged, and Plaintiff's work credits would have been cancelled. (Id.) However, Plaintiff did not voluntarily cease working for the union, he was intentionally excluded from employment opportunities as the union discriminated against him for political activities he carried out while still a member. (Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment ("Pl. Br.") Ex. 4, 5). Plaintiff subsequently prevailed in a discrimination suit before the NLRB. (Id. at Ex. 4-6). The NLRB ordered Defendant to cease its discriminatory conduct, and Plaintiff was ultimately awarded back pay and benefits pursuant to an arbitration agreement. (Id.)

contributions on their own. (Id. at 11-12). The Pension Fund is a defined benefit plan, which means that no participating employee has any individual interest in the monies of the plan. (Id.) Local 4 also has an Annuity Fund where the employee-participants may make claims on the cash in the fund after they are no longer employed under the collective bargaining agreement for a period of twelve months. (Id. at 7).[2]

In August 2004, Plaintiff began receiving disability benefits. (Id. at Ex. 3, p. 35). At that time he inquired about obtaining his pension benefits. (Id.) He contacted the third-party administrator of the Pension Plan, Harold Hauser, by telephone and was told that he did not have the requisite hours to be considered eligible for benefits. (Id. at 37). Plaintiff requested an application for pension benefits and claims one was never sent. (Id.) As a result, Plaintiff filed a Complaint pursuant to 29 U.S.C. § 1132(a)(1)(B) against Defendant and Harold Hauser to recover pension benefits on March 3, 2005. Defendant filed its Answer on August 8, 2005. On September 20, 2005, Plaintiff's Complaint against Harold Hauser was dismissed pursuant to Fed. R. Civ. P. 4(m), without prejudice and without costs. Defendant filed this motion for summary judgment on March 31, 2006.

## II. DISCUSSION

Plaintiff contends that he is entitled to receive pension benefits from the Pension Plan Fund, or alternatively, that he is entitled to be reimbursed for money contributed to the fund on his behalf. This Court will not consider Plaintiff's arguments on their merits because Plaintiff's claims must be dismissed for failure to exhaust administrative remedies. Defendant asks the

---

[2] Plaintiff applied for and received his full cash balance from the Annuity Fund.

Court to consider this case on its merits despite Plaintiff's procedural deficiencies. (Def. Br. at 7). As explained below, case law and the relevant underlying policies dictate against ruling on the merits of this case.

### A. The Exhaustion Requirement

An employee seeking to receive pension benefits may bring a civil action under the Employee Retirement Income Security Act ("ERISA") to "recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1)(B) (1976). Under ERISA a party must exhaust all of the administrative remedies available under the plan before filing a claim in Federal Court. Weldon v. Kraft, Inc., 896 F.2d 793, 800 (3d Cir. 1990) (citing Wolf v. Nat'l Shopmen Pension Fund, 728 F.2d 182, 185 (3d. Cir. 1986); Zipf v. Am. Tel. & Tel. Co., 799 F.2d 889, 892 (3d Cir. 1986); see also Amato v. Bernard, 618 F.2d 559, 567 (9th Cir. 1980) (holding that "sound policy requires the application of the exhaustion doctrine in suits under [ERISA]").

Federal courts require a claimant to exhaust all of his administrative remedies "to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." Amato, 618 F.2d at 567. Moreover, the board of trustees who administer ERISA plans "are granted broad fiduciary rights and responsibilities under ERISA . . . and implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their

decision-making processes." Id. (internal citations ommitted); see also Zipf, 799 F.2d at 892 ("When a plan participant claims that he or she has unjustly been denied benefits, it is appropriate to require participants first to address their complaints to the fiduciaries to whom Congress . . . assigned the primary responsibility for evaluating claims for benefits").

While ordinarily administrative remedies must be exhausted before a district court will entertain a claim under ERISA, an exception can be made when it appears that application through the administrative process would be futile. Berger v. Edgewater Steel Co., 911 F.2d 911, 916 (3d Cir. 1990). In deciding whether a pension plan's internal remedy procedure would be futile for a claimant, a court considers a number of factors, "including (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the benefit plan administrator to comply with his own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal would be futile." Harrow v. Prudential Ins. Co. of Am., 279 F.3d 244, 250 (3d Cir. 2002). Of course, the list of factors enumerated in Harrow does not account for every factor that a court may consider, Lawson v. Nationwide Mut. Ins. Co., 2005 U.S. Dist. LEXIS 12857 *14, No. 05-1249 (E.D. Pa. 2005), nor need a court weigh all factors equally. See Berger, 911 F.2d at 916-17; Metz v. United Counties Bancorp., 61 F. Supp. 2d 364, 383-84 (D.N.J. 1999).

Allegations of futility are not sufficient to exempt a plaintiff from the exhaustion requirement, as the court in Harrow explained,

> courts have been reluctant to grant the exception without clear evidence of futility. 279 F.3d at 250-51. E.g., Bourgeois v. Pension Plan for Employees of Santa Fe

> Int'l Corp., 215 F.3d 475, 480 (5th Cir. 2000); Weiner v. Klais & Co., 108 F.3d 86, 91 (6th Cir. 1997)[]; Diaz [v. United Agric. Employee Welfare Benefit Plan & Trust], 50 F.3d 1478, 1485-86 (9th Cir 1995) (denying futility exception where [] insurance company's on-site representative said, "They're not going to pay," because court found "record contains nothing but speculation to suggest that the administrators would have reached a preconceived result in that respect."); see also Wilson v. Globe Specialty Prods., 117 F. Supp. 2d 92, 99 (D. Mass. 2000) (requiring exhaustion where administrator arguably evidenced an intent to refuse plaintiff's claim because court refused to "predict" how administrator would have decided the claim on review); Kulik v. Metro. Life Ins. Co., 1998 U.S. Dist. LEXIS 9011, No. 96-1608, 1998 WL 404383, at *3 (M.D. Fla. Feb. 25, 1998) ([holding that] unanswered letter summarizing phone conversation with plan administrator does not demonstrate futility because the letter contained no request for information and no reference to plaintiff's intent to appeal denial of his claims).

279 F.3d at 250. In fact, a "clear and positive showing of futility" must be provided for a claimant to merit a waiver of the exhaustion requirement. Brown v. Cont'l Baking Co., 891 F. Supp. 238, 241 (E.D. Pa. 1995) (citing Canale v. Yegen, 782 F. Supp. 963, 972 (D.N.J 1992)); see also Davenport v. Abrams, Inc., 249 F.3d 130, 133 (2d Cir. 2001) (exhaustion requirement not excused because correspondence with employer did not amount to an "unambiguous application for benefits and a formal or informal administrative decision denying benefits [such that] it is clear that seeking further administrative review would be futile") (brackets in original) (internal citation omitted). A mere showing that a claim was denied when initially presented to a plan administrator, similarly, does not satisfy the threshold for establishing a futility exception. Sibley-Schreiber v. Oxford Health Plans, Inc., 62 F. Supp. 2d 979, 986 (E.D.N.Y. 1999) (citing Comm. Workers of Am. v. Am. Tel. & Tel. Co., 40 F.3d 426, 433 (D.C. Cir. 1994)).

### B. Analysis

Plaintiff's claim in the instant case must be dismissed for failure to exhaust

administrative remedies. Plaintiff has not proffered evidence that permits this Court to find that an attempt to receive his pension through his plan's internal application process would have been futile.

Relying on the five Harrow factors that courts focus on in determining whether the administrative procedure is futile, it is clear that Plaintiff's claim can not proceed. 279 F.3d at 250. Particularly, the first and second factors weigh heavily against the Plaintiff; these factors instruct courts to ask (1) whether a plaintiff diligently pursued administrative relief, and (2) whether it was reasonable for the plaintiff to have brought suit in the district court under the circumstances. Id. Even assuming that Plaintiff did not receive the application when he asked Harold Hauser to send him one, Plaintiff still did not abide by the requirements found in the Summary Plan Description ("SPD") for the Roofers Local #4 Pension Trust, in the section entitled "Questions and Answers Covering Principle Provisions of the Pension Plan." Schaffer Aff., Exhibit 4 at 12-13. The SPD provides that

> [w]hen you meet the requirements for a pension, you will receive a pension provided (a) *you file with the Trustees an application for a pension* payable upon your retirement on a form *which may be obtained at the office of the pension fund*, (b) you submit proof of your date of birth to the Trustees, and (c) if you have not reached age 65 you cease to work in the roofing industry.

Id. at 12 (emphasis added).

Plaintiff's SPD explicitly states that the necessary forms are available at the office of the pension fund in four separate sections of the SPD. Schaffer Aff., Exhibit 4 at 1, 12-13, 16, 21. The SPD also indicates that the Board is the administrator of the fund and provides an address and telephone number at which it can be contacted. Id. at 6. It cannot be said that Plaintiff

"diligently pursued" administrative relief as he did not go through the proper channels to obtain or submit an application. Harrow, 279 F.3d at 250.

The phone conversation in which Hauser predicted that Plaintiff would not be eligible for benefits does not fulfill the requirement that a claimant submit an application before being considered for a pension. Harrow, 279 F.3d at 255 (citing Diaz, 50 F.3d at 1484). Regardless, even if the Court were to treat the informal correspondence as an application, there would still be a review process provided for in the SPD that Plaintiff must undertake. Schaffer Aff., Exhibit 4 at 19-21. Plaintiff failed to diligently pursue administrative relief; in fact, he never officially initiated the process. It is therefore unreasonable for Plaintiff to now bring suit in a federal court.

As to the other three specific factors that are propounded in Harrow, Plaintiff (1) provided no proof, or even allegations, of a fixed policy denying benefits, (2) did not assert that the [Board] failed to comply with its own internal administrative procedures, and (3) proffered no testimony from a plan administrator indicating that an administrative appeal would be futile. 279 F.3d at 250. Plaintiff did not submit an application and thus gave the Pension Fund administrators no opportunity to evaluate his claim. Plaintiff has not established any flaw in the Plan's application or procedures, nor does Plaintiff suggest that similarly situated claimants were denied their pensions upon application.

This Court finds that none of the policies that favor exempting a claimant from exhausting all administrative remedies exist here. Harrow, 279 F.3d at 250. As the court explained in Zipf v. American Tel. & Tel. Co., requiring a plan participant to bring his claims before the plan's fiduciaries "encourages the consistent treatment of claims for benefits,

minimizes the costs and delays of claim settlement in a nonadversarial setting, and creates a record of the plan's rationales for denial of the claim." 799 F.2d at 892. Plaintiff has unjustifiably failed to bring his claim before the Board of Trustees, who evaluate claims for pension benefits.

Plaintiff's Complaint refers extensively to the discriminatory conduct of the Roofers Local #4 labor union in the early 1990s, and indicates that one of the Board members of the Pension Fund Trust was involved in a prior discrimination case. Plaintiff's Complaint at 10. While Plaintiff did indeed win a discrimination suit against the union a decade earlier, it does not follow that the present Board of Trustees, which is composed of three employees and three employers, would discriminate against him in evaluating his application. A mere allegation of conspiracy "should not be allowed to relieve [a plaintiff] of the jurisdictional prerequisite of exhausting his internal union remedies." Aldridge v. Ludwig-Honold Mfg. Co., 385 F. Supp. 695, 699 (E.D. Pa. 1974). While this Court acknowledges the past conflict between Plaintiff and the Local 4 Union members, Plaintiff's claim must go before the Board for consideration before a suit can properly be brought in district court.

Plaintiff has not provided clear evidence that it would have been futile for him to apply for a pension using Local 4 Pension Plan's procedures. Plaintiff contacted the actuary of the Pension Plan, Harold Hauser, by telephone and was told that it did not appear that he had sufficient credited service for his pension benefits to vest. Montalbano Cert. Exhibit 3 at 35-37. Plaintiff alleges that despite Hauser's assessment of his eligibility, he asked Hauser "to send the papers anyway." Id. When questioned about his conversation with Hauser, Plaintiff asserted that "{He thought} there were about three" phone calls, and said "[He didn't] believe [he] received"

the application for a pension. Id. These assertions do not meet the "clear and positive evidence" standard that courts require to grant the futility exception to the requirement that a claimant exhaust all administrative remedies before bringing a suit in federal court. Harrow, 279 F.3d at 250-51 (holding that making an initial telephonic inquiry and then bringing a suit in a federal court was not reasonable); Berger, 911 F.2d at 917 (holding that exhaustion requires a claimant to submit an application for benefits despite an employer having predicting that he would be ineligible); Metz v. United Counties Bancorp, 61 F. Supp. 2d 364, 384 (D.N.J. 1996) (explaining that the "Court does not agree that [] two communications are evidence of futility sufficient to excuse the plaintiff's failure to comply with ERISA's exhaustion requirements."); Grumbine v. Teamsters Pension Trust Fund, 638 F. Supp. 1284, 1287 (E.D. Pa. 1986) (rejecting claim of futility in application for disability retirement benefits, where plan failed to provide claimant plan documents and information concerning her claim, and where claimant's application for pension benefits had already been denied); Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund, 590 F. Supp. 211, 215 (E.D. Pa. 1984).

Plaintiff did not exhaust his administrative remedies before bringing this suit in the district court. He did not attempt to apply for a pension, and he has not shown that engaging in the standard pension application process before the Board of Trustees would have been futile. Plaintiff is therefore not excused from exhausting all administrative remedies before bringing suit in federal court.

### III. CONCLUSION

A federal court will entertain ERISA claims brought under 29 U.S.C. § 1132(a) only if the claimant has exhausted all administrative remedies before bringing the case in a district court. Plaintiff here has failed to do so, and accordingly Defendant's Motion for Summary Judgment is **granted.**.

DENNIS M. CAVANAUGH, U.S.D.J.

Dated:     September 19, 2006
Original:  Clerk's Office
Copies:    All Counsel of Record
           File